JESSE DANIEL FISHER,
*Petitioner-Appellant,*

*v.*

Rick ANGELOZZI,
Superintendent,
Deer Ridge Correctional Institution,
*Defendant-Respondent.*

Jefferson County Circuit Court
11CV0050; A154576

398 P3d 367

Ryan T. O'Connor argued the cause for appellant. With him on the briefs was O'Connor Weber LLP.

Dustin E. Buehler, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and James Aaron, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Ortega, Judge, and Tookey, Judge.*

---

* Ortega, J., *vice* Nakamoto, J. pro tempore.

## ORTEGA, J.

Petitioner sought post-conviction relief with respect to several convictions entered after a guilty plea. In his petition, he raised several claims that he was denied his right to adequate and effective assistance of trial and appellate counsel under Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution.[1] He also brought a claim that the state's failure to disclose an exculpatory police report violated his federal due process rights as recognized by *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). At the close of the post-conviction trial, the court announced on the record that petitioner's *Brady* violation claim failed because there was no "prosecutorial misconduct." The court also announced several reasons for denying petitioner's ineffective assistance claims and entered a judgment denying all of petitioner's claims, which incorporated by reference the court's findings and conclusions "announced on [the] record."

On appeal, in his first assignment of error, petitioner challenges the denial of his *Brady* violation claim, and, in his second assignment of error, he challenges the court's denial of his claim for ineffective assistance of trial counsel based on counsel's failure to investigate petitioner's theory of defense. In a third assignment of error, he argues that the court's judgment does not make the legal bases for the denial of relief apparent as to each claim, which is a violation of ORS 138.640(1), as construed in *Datt v. Hill*, 347 Or 672, 685, 227 P3d 714 (2010) (to satisfy ORS 138.640(1), a post-conviction judgment denying relief must, among other things, "make the legal bases for denial of relief apparent").[2]

---

[1] Although the state and federal constitutional provisions providing the right to adequate or effective assistance of counsel are "'worded differently,'" the Supreme Court has stated that they "'embody similar objectives,'" *Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015) (quoting *Krummacher v. Gierloff*, 290 Or 867, 871, 627 P2d 458 (1981)), and are "functionally equivalent," *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). For ease of reference, we do not differentiate between petitioner's federal and state ineffective assistance claims in this opinion.

[2] We understand petitioner's third assignment of error to challenge the judgment's compliance with ORS 138.640(1) only with respect to the two claims at issue on appeal—that is, petitioner's *Brady* violation claim and his

Defendant does not defend the post-conviction court's conclusion that petitioner's *Brady* violation claim failed because there was no "prosecutorial misconduct." Instead, defendant advances two alternative bases to affirm the denial of the *Brady* violation claim, which we discuss in more detail later in the opinion. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining when an appellate court can affirm the lower court's ruling under the "right for the wrong reason" principle). As for petitioner's ineffective assistance claim, defendant asserts that the court correctly determined that trial counsel reasonably decided not to conduct further investigation into petitioner's defense theory. Finally, defendant responds to petitioner's claim that the judgment fails to comply with ORS 138.640(1), by maintaining that the reference in the court's written judgment to the court's oral findings and conclusions is sufficient to satisfy the requirements announced in *Datt*.

We conclude that the post-conviction court committed legal error by concluding that prosecutorial misconduct is required to sustain a *Brady* violation claim. We also decline to affirm based on defendant's alternative bases for affirmance. As for petitioner's ineffective assistance of counsel claim, the post-conviction court's judgment does not satisfy ORS 138.640(1), as construed in *Datt*. Moreover, the deficiencies in the judgment as to that claim obscure the basis of the post-conviction court's denial of relief and, given that we must remand for entry of a judgment that satisfies the *Datt* requirements as to that claim, we decline to address the merits of petitioner's second assignment of error. Accordingly, we reverse and remand for further proceedings on petitioner's *Brady* violation claim and petitioner's claim for ineffective assistance of counsel based on counsel's failure to investigate petitioner's theory of defense.

---

ineffective assistance claim related to trial counsel's failure to investigate petitioner's defense theory. Accordingly, we do not address whether the court's judgment complied with *Datt* with respect to the remainder of petitioner's post-conviction claims. And, to the extent that petitioner argues that the post-conviction court judgment fails to comply with ORS 138.640(1) with respect to petitioner's *Brady* violation claim, we reject that argument without published discussion.

We review post-conviction proceedings for errors of law, and we are bound by the factual findings of the post-conviction court if any evidence in the record supports those findings. *Montez v. Czerniak*, 355 Or 1, 8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistent with the post-conviction court's conclusions of law." *Id.* However, "[i]f an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the presumption does not apply." *Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015). We state the relevant facts consistently with that standard.

In September 2010, police officers found petitioner passed out in his car, possibly under the influence of intoxicants. Petitioner, who was on probation for two prior convictions, attempted to flee when the officers made contact with him. After a struggle, the officers arrested petitioner and searched him and his car. Police found identification for a person named Ladley in petitioner's wallet, and police dispatch confirmed that Ladley had been the victim of a recent burglary. The search of petitioner's car revealed stolen property belonging to Ladley (including credit cards), drugs, drug paraphernalia, and burglary tools.

About a week later, police again contacted petitioner following a report of a suspicious person in a car; he again resisted being taken into custody and was eventually handcuffed after a struggle. An inventory search of petitioner's car resulted in the discovery of drugs, drug paraphernalia, and stolen property, including two checkbooks that had been stolen out of the owners' vehicles in the previous week.

Based on those two incidents, a grand jury indicted petitioner on 12 counts, including two counts of possession of a controlled substance (Counts 1 and 8), three counts of identity theft (Counts 2, 9, and 10), one count of second-degree theft (Count 3), two counts of resisting arrest (Counts 4 and 12), one count of third-degree escape (Count 5), one count of assault of a public safety officer (Count 6), one count of

attempted assault of a public safety officer (Count 7), and one count of possession of a burglary tool (Count 11).

While in jail in November 2010, petitioner informed his attorney and a retained psychologist that another man was responsible for stealing the checkbooks found in his car that formed the basis for Counts 9 and 10. Specifically, he claimed that Schmit, who had a reputation for identify theft, had stolen his car and left the stolen checkbooks inside to be found by police during the second incident, which occurred after petitioner had recovered the car. A few weeks later, while petitioner was in jail, he learned "through sources at the jail" that Schmit had been arrested.

On January 18, 2011, petitioner agreed to plead guilty to Counts 1, 2, 4, 7, 9, and 12 in exchange for dismissal of the remaining counts and a recommended combined sentence of 57 months' imprisonment and 24 months' post-prison supervision (PPS). As part of the plea agreement, petitioner admitted that he was in possession of personal identification of others "with the intent to deceive or defraud others." That same day, the court issued an order to show cause why petitioner's probation should not be revoked based on his new crimes. The trial court held a hearing for a "global resolution" of the pending criminal charges and probation violation allegations. The court accepted the plea and entered judgment imposing the agreed upon sentences.

Subsequently, petitioner initiated post-conviction proceedings. In that process, he discovered the existence of a police report that detailed the arrest of Schmit on December 12, 2010. That report described Schmit's arrest for identify theft and included evidence logs that listed identifying documents of several people that Schmit had possessed at the time of his arrest. Those documents included two documents that belonged to petitioner.

Petitioner amended his petition for post-conviction relief to add an allegation that the state's failure to turn over that police report violated petitioner's due process rights under *Brady*. He also added an allegation that his trial counsel provided ineffective assistance of counsel because trial counsel "failed to conduct an adequate investigation of the facts and circumstances giving rise to petitioner's

indictment." Petitioner alleged that there was evidence available to trial counsel that should have prompted him to investigate petitioner's theory of defense—*i.e.*, that someone had stolen petitioner's car and left incriminating evidence inside. Further, petitioner alleged that, if counsel had adequately investigated that theory and located the police report, once counsel advised petitioner of the police report's contents, petitioner would have proceeded to trial instead of pleading guilty.

At the close of the post-conviction trial, the court denied petitioner's *Brady* claim, stating on the record:

"I don't think this is really an issue of prosecutorial misconduct. I think it goes a step beyond that. I'm not convinced that there was prosecutorial misconduct, to start with, based upon the testimony of the deputy DA that she didn't really put these two things together, and she didn't indicate that there was a reason to do that."

The court also denied all of petitioner's ineffective assistance of counsel claims, although, as we explain later in the opinion, the legal basis for denying petitioner's ineffective assistance claim for failure to investigate petitioner's theory of defense is unclear. The court entered a judgment denying all relief, which incorporated by reference the court's findings and conclusion that were "announced on [the] record."

## *BRADY* VIOLATION

We begin with petitioner's *Brady* violation claim. *Brady* recognized a constitutional obligation for the prosecution in a criminal trial to disclose evidence that is favorable to the defense and material to guilt or sentencing. 373 US at 87. Evidence that is "favorable" generally falls into two categories: exculpatory evidence and impeachment evidence.[3]

---

[3] We note that the law on *Brady*'s application in cases involving guilty pleas is unsettled. In *United States v. Ruiz*, 536 US 622, 633, 122 S Ct 2450, 153 L Ed 2d 586 (2002), the Court held that "the Constitution does not require the Government to disclose material *impeachment* evidence prior to entering a plea agreement with a criminal defendant." (Emphasis added.) *Ruiz*, however, did not explicitly address whether a defendant can withdraw a guilty plea if he entered it without the government having disclosed *exculpatory* evidence that it possessed. The federal circuit courts have split on that issue. For example, in *Sanchez v. U.S.*, 50 F3d 1448, 1453 (9th Cir 1995), the Ninth Circuit held that a defendant can argue that his guilty plea was not voluntary and intelligent because it was

*Giglio v. United States*, 405 US 150, 154-55, 92 S Ct 763, 31 L Ed 2d 104 (1972). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 US 667, 682, 105 S Ct 3375, 87 L Ed 2d 481 (1985). The prosecutor's obligation is not "measured by the moral culpability, or the willfulness, of the prosecutor." *United States v. Agurs*, 427 US 97, 110, 96 S Ct 2392, 49 L Ed 2d 342 (1976). Rather, the prosecutor has a duty to disclose all favorable evidence known to the prosecutor or evidence that the prosecutor could have learned from "others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 US 419, 437, 115 S Ct 1555, 131 L Ed 2d 490 (1995).

In sum, "[t]here are three components to a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 US 263, 281-82, 119 S Ct 1936, 144 L Ed 2d 286 (1999).

On appeal, petitioner asserts that he was entitled to post-conviction relief on his *Brady* violation claim because the state possessed an exculpatory police report that it failed to disclose to petitioner before he pleaded guilty, and, had he known about the report, there was a "reasonable probability" that he would have exercised his right to a trial.

---

made in the absence of withheld *Brady* material. Moreover, the Second, Sixth, Seventh, Eighth, and Tenth Circuits have all held that a *Brady* violation involving exculpatory evidence can justify allowing a defendant to withdraw a guilty plea. However, in *U.S. v. Moussaoui*, 591 F3d 263, 285 (4th Cir 2010), the Fourth Circuit explained that "[t]he *Brady* right, however, is a *trial* right. It requires a prosecutor to disclose evidence favorable to the defense if the evidence is material to either guilt or punishment, and exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty." The Fourth Circuit went on to state that, "[w]hen a defendant pleads guilty, those concerns are almost completely eliminated because his guilt is admitted." *Id.* The Fifth Circuit expressed similar sentiments in *Matthew v. Johnson*, 201 F3d 353 (5th Cir 2000). The parties in this case did not raise below, and have not addressed on appeal, how petitioner's guilty plea affects the analysis under *Brady*. Accordingly, that issue is not presented to us, and we offer no opinion on it.

Defendant does not dispute that the police report was exculpatory and does not defend the post-conviction court's conclusion that petitioner's *Brady* claim failed because of a lack of prosecutorial misconduct. Instead, defendant acknowledges that a prosecutor's failure to recognize the exculpatory nature of evidence does not affect the *Brady* analysis, *see Agurs*, 427 US at 110, and asserts instead that we should exercise our discretion to affirm the court's denial of petitioner's *Brady* violation claim based on either of two alternative bases for affirmance. *See Outdoor Media*, 331 Or at 659-60. Under *Outdoor Media*, as a matter of our discretion, we may affirm a trial court's ruling on a basis that was not relied upon by the court if (1) "the facts of record [are] sufficient to support the alternative basis for affirmance"; (2) "the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance"; and (3) "the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Id.*

First, defendant asserts that we should affirm because petitioner's *Brady* violation claim is procedurally barred under ORS 138.550(1). Defendant points to *Palmer v. State of Oregon*, 318 Or 352, 358, 867 P2d 1368 (1994), which held that, under ORS 138.550(1), "[w]hen a criminal defendant fails to raise an issue at trial that the defendant reasonably could have been expected to raise," the defendant cannot assert that issue as a ground for post-conviction relief unless an exception applies. One exception is that trial counsel was excusably unaware of facts that would have disclosed a basis for the assertion of the issue, and another is where the failure to raise that issue constituted inadequate assistance of trial counsel. *Id.* at 357-58. Here, defendant argues that, because petitioner and trial counsel knew that Schmit had been arrested in December 2012, they reasonably could have been expected to seek discovery of the police report related to that arrest in the trial court proceedings. Defendant posits that, if the state had denied discovery of the report, petitioner could have raised the issue with the trial court. In defendant's view, petitioner's failure to take that approach bars his *Brady* claim.

We agree with petitioner that defendant's argument on appeal, as well as below, focuses on the wrong question. As the Supreme Court recently stated in *Eklof v. Steward*, 360 Or 717, 728, 385 P3d 1074 (2016), "the gravamen of a *Brady* claim is that exculpatory evidence was withheld *by the prosecution*." (Emphasis in original.) Accordingly, the question is "not whether counsel reasonably should have discovered [the exculpatory information] but whether counsel reasonably should have discovered that the prosecutor had withheld [favorable evidence]." *Id.* at 728-29. As noted, defendant's argument is focused on whether petitioner's trial counsel reasonably should have discovered the police report, not whether petitioner's trial counsel should have discovered prior to petitioner's guilty plea that the prosecutor had *withheld* the police report. That is also what defendant argued to the post-conviction court. We will not consider an alternative basis for affirmance "if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue." *Outdoor Media*, 331 Or at 660 (emphasis added). Here, if defendant had framed the issue properly to the post-conviction court, petitioner may have created a different record that directly addressed whether trial counsel should have discovered that, during proceedings before the trial court, the prosecutor had withheld the police report. In addition, because the post-conviction court denied petitioner's *Brady* claim based on the lack of prosecutorial misconduct, it did not need to reach any factual issues related to what trial counsel knew at the time of the plea bargaining that might have informed whether trial counsel should have discovered that the prosecutor had withheld the police report.[4] For those reasons, we decline to consider defendant's first alternative basis for affirmance.

Second, defendant asks us to affirm because petitioner failed to prove that the prosecutor "suppressed" the exculpatory evidence by not disclosing the police report. In advancing that argument, defendant relies on the Ninth Circuit Court of Appeals' decision in *Cunningham v. Wong*,

---

[4] We note that trial counsel submitted a request to the prosecutor for any *Brady* material. The result of that request is unclear from the record.

704 F3d 1143, 1154 (9th Cir 2013), which states the version of the "defendant due diligence rule" that the Ninth Circuit has adopted. *Cunningham* held that, when a defendant "is aware of the essential facts enabling him to take advantage of any exculpatory evidence," the state has not suppressed the evidence even if it failed to "bring the evidence to the direct attention of the defense." *Id.* Applying the rule in *Cunningham* to the facts of this case, defendant asserts that petitioner "knew that police had arrested Schmit and that police found some documents belonging to petitioner in Schmit's possession. That information should have alerted petitioner to the probability that official records of that arrest existed, and allowed him to seek those records through discovery."

As petitioner points out, the contours of the "defendant due diligence rule" stated in *Cunningham* have been called into question by at least one subsequent Ninth Circuit case. *See Amado v. Gonzalez*, 758 F3d 1119, 1136 (9th Cir 2014) (stating that imposing a due diligence requirement on defense counsel would "flip" the prosecutor's obligation to disclose favorable evidence). We note further that the application of such a rule is far from universal or uniform. *See* Kate Weisburd, *Prosecutors Hide, Defendants Seek: The Erosion of Brady Through the Defendant Due Diligence Rule*, 60 UCLA L Rev 138, 153, 153 n 80 (2012) (criticizing the rule as having "no legitimate doctrinal support" and noting that, although several federal circuit courts have adopted "some form of the defendant due diligence rule," the Tenth Circuit and District of Columbia Circuit have not).

Even assuming that some form of the "defendant due diligence rule" exists in Oregon,[5] defendant's argument again runs into problems under *Outdoor Media*. That is, had defendant argued the application of the "defendant due diligence rule" to the post-conviction court, petitioner may have created a different record—in particular, as to exactly what

---

[5] In *Eklof*, the Supreme Court recognized, without deciding, that "there may be viable arguments * * * that failure to disclose information to defense attorneys does not constitute a *Brady* violation because the criminal defendant or defense counsel knew the information from other sources." 360 Or at 736 n 9 (citing statement in *Agurs*, 427 US at 103, that *Brady* applies to "information which had been known to the prosecution but unknown to the defense").

petitioner and his trial counsel knew about the details of Schmit's arrest in December 2010. Given defendant's failure to argue the "defendant due diligence rule" below, petitioner had no reason to fully develop what petitioner knew about Schmit's arrest and what exactly he told trial counsel. Accordingly, we decline to consider defendant's second alternative basis for affirmance. Therefore, given the legal error the post-conviction court committed by rejecting the claim based on the lack of prosecutorial misconduct, we must reverse and remand the post-conviction court's judgment for further proceedings as to petitioner's *Brady* violation claim.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner next asserts that the post-conviction court erred by denying his ineffective assistance of trial counsel claim for trial counsel's failure to investigate the circumstances surrounding Schmit's arrest. On the merits, petitioner asserts that trial counsel exercising reasonable professional skill and judgment would have at least conducted a brief investigation to attempt to locate Schmit and corroborate petitioner's version of events. He further asserts that, if trial counsel had done so, petitioner would have exercised his right to trial. Alternatively, petitioner asserts that the court's judgment fails to comply with ORS 138.640(1), as construed in *Datt.*

Because we agree that the court's judgment fails to comply with ORS 138.640(1) as to petitioner's ineffective assistance claim, we address that issue first. Under *Datt,* to satisfy ORS 138.640(1), a post-conviction judgment that denies relief must do three things:

"(1) identify the claims for relief that the court considered and make separate rulings on each claim; (2) declare, with regard to each claim, whether the denial is based on a petitioner's failure to utilize or follow available state procedures or a failure to establish the merits of the claim; and (3) make the legal bases for denial of relief apparent."

347 Or at 685. "To comply with *Datt's* third requirement, with respect to each claim that contains more than one element, 'the judgment must identify each element that the court determined was not met[.]'" *Gonzales v. Taylor,* 274 Or App 631, 633, 362 P3d 896 (2015), *rev den,* 358 Or 611

(2016) (quoting *Soderstrom v. Premo*, 274 Or App 624, 626, 360 P3d 1272 (2015), *rev den*, 358 Or 550 (2016)). Further, "the requirement that a judgment denying post-conviction relief 'make the legal bases for denial of relief apparent,' * * * can be met by oral findings that the post-conviction court makes on the record and incorporates into the judgment by reference." *Asbill v. Angelozzi*, 275 Or App 408, 413, 365 P3d 587 (2015), *rev den*, 358 Or 794 (2016).

Here, petitioner asserts that the court's judgment fails to meet the third *Datt* requirement because his ineffective assistance of counsel claim contains two elements: (1) that counsel failed to exercise reasonable professional skill and judgment and (2) that petitioner suffered prejudice as a result. *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Petitioner argues that the written judgment only indicates that the post-conviction court denied petitioner relief on all claims based on a failure to meet his burden of proof, and that the oral findings incorporated by reference include no indication as to which elements of petitioner's ineffective assistance of counsel claim petitioner failed to prove.

Defendant responds that petitioner's *Datt* argument is unpreserved because the court announced its findings and conclusions on the record and "then informed the parties that it would send the judgment that it had just prepared to Jefferson County." Accordingly, defendant asserts that petitioner "should reasonably have expected that the judgment would generally mirror the oral ruling and, at a minimum, should have raised the issue with the post-conviction court if he was unsure of the basis for the court's decision." That is, defendant argues that petitioner had a practical opportunity to object to the judgment form. *See Dudrov v. State of Oregon*, 274 Or App 636, 638, 361 P3d 647 (2015), *rev den*, 358 Or 794 (2016) (holding that, when a petitioner is provided an opportunity to raise any issues with the form of judgment to the court before it is entered, the petitioner is not excused from the obligation to preserve assignment of error based on *Datt*). We have rejected that same argument under indistinguishable circumstances in recent cases, and we do so again in this case. *See Himebaugh v. Taylor*, 277 Or App 18, 20-21, 369 P3d 446 (2016) (record failed to indicate

that the process used by the court allowed the petitioner to review the form of judgment so that he could raise objections to it); *see also Gonzales,* 274 Or App at 633-34 (petitioner did not have, as a practical matter, an opportunity to raise issues with the form of judgment to the post-conviction court).

Defendant also argues that the court's oral findings and conclusions were sufficient to satisfy ORS 138.640(1). We disagree. At the end of the post-conviction trial, the court made findings and conclusions on the record, which it later incorporated by reference into the judgment denying all of petitioner's claims. In doing so, the court rejected a number of post-conviction claims that are not at issue on appeal. In addition, although there are two instances during the court's remarks that potentially touched on petitioner's ineffective assistance claim that is at issue on appeal, those remarks are not clear as to whether the court explicitly reached that claim, and if it did, the legal basis for the court's ruling—*i.e.*, whether it concluded that trial counsel exercised reasonable professional skill and judgment or whether it concluded that petitioner did not suffer prejudice. In fact, it appears from the court's remarks that the court was focused on whether an investigation by trial counsel into Schmit would have produced mitigating evidence that would have reduced petitioner's sentence—not the gravamen of petitioner's claim that, had trial counsel investigated Schmit's arrest, he would have discovered evidence that supported petitioner's defense theory.

Moreover, the deficiencies in the form of judgment obscure the basis of the post-conviction court's denial of relief on that claim, and, because we must remand for entry of a judgment that satisfies the *Datt* requirements as to that claim, we do not address petitioner's second assignment of error. In particular, given our uncertainty as to whether the post-conviction court explicitly reached and decided the ineffective assistance claim raised on appeal, there may be factual issues central to the resolution of that claim that the court did not decide, and that must be decided by the post-conviction court in the first instance. *See Myers v. Brockamp,* 271 Or App 716, 718, 353 P3d 1 (2015) (not addressing assignments of error challenging merits of post-conviction

court's denial of relief on a claim, where judgment did not comply with *Datt* as to the claim, and the post-conviction court would have a chance to further address the merits of the claim on remand).

Reversed and remanded for further proceedings on petitioner's *Brady* claim and petitioner's claim for ineffective assistance of counsel based on counsel's failure to investigate the arrest of Schmit; otherwise affirmed.