POWERS, J.
*108 *311 In this post-conviction proceeding, petitioner appeals from a judgment denying his petition for post-conviction relief that contained two related claims involving the advice he received on the immigration consequences of his underlying guilty plea. First, petitioner alleges that he was denied adequate assistance of counsel where, despite being advised that he would be deported if he entered a guilty plea, he was not advised that a plea would render him ineligible for consideration under the Deferred Action for Childhood Arrivals (DACA) program, which allows specified noncitizens who were brought to the United States as children to apply and potentially receive a limited deferral from removal proceedings in an exercise of prosecutorial discretion. Second, petitioner asserts that his plea was not knowingly or voluntarily entered, because he was misinformed by his attorney such that he did not fully understand the immigration consequences that would result from his guilty plea. The post-conviction court rejected both claims, concluding that petitioner received adequate assistance of counsel such that he was adequately informed of the consequences of his plea and that he knowingly and voluntarily entered into the plea. For the reasons that follow, we affirm the post-conviction court's judgment.
We review the post-conviction court's legal conclusions for errors of law. Chew v. State of Oregon , 121 Or. App. 474, 476, 855 P.2d 1120, rev. den. , 318 Or. 24, 862 P.2d 1304 (1993). In our review, we are bound by its factual findings that are supported by evidence in the record. Fisher v. Angelozzi , 285 Or. App. 541, 545, 398 P.3d 367 (2017). If the post-conviction court does not make express findings on a specific issue and there is evidence from which the facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion made by the trial court. Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968). We describe the facts in accordance with those standards of review.
Petitioner, a noncitizen born in 1993, was brought to the United States in either 1994 or 1997 when he was a minor. In 2013, petitioner was charged with assault in the *312 third degree and riot, based on his participation in a gang-related attack involving five or more persons that resulted in the victim suffering physical injury. On the same day that he was charged, petitioner met with his court-appointed counsel, and he admitted his involvement and guilt to the charges to his attorney during that meeting. About eight days later, on a Friday, the state extended a written plea offer, which trial counsel presented to petitioner the following Monday morning for review. The offer included a term of probation and a 10-day jail term with credit for time served. At that point, petitioner had been in custody for 11 days. Trial counsel also discussed petitioner's immigration status with him at that meeting:
"During my conversation with [petitioner] we specifically discussed his immigration status. [Petitioner] informed me that he was not a citizen and was not in the United States legally. I informed [petitioner] that if he plead[ed] guilty to the charges he would be deported unless [Immigration and Customs Enforcement (ICE) ] decided not to pursue deportation proceedings. [Petitioner] indicated that he was going to retain an immigration attorney to represent him in his immigration issues. I inquired if [petitioner] wanted me to set the court appearance out for a period of time to provide him additional time to talk with *109 the immigration attorney. [Petitioner] indicated that he did not want to set the appearance over as he would be released from the custody of the Marion County Jail that day if he accepted the plea."
Petitioner and trial counsel then reviewed the plea petition, which included the following paragraph:
"10. I understand that if I am not a citizen of the United States or if I am in this country without permission, conviction of a crime will result in my DEPORTATION from, or exclusion from admission to, the United States. I also understand that I may be denied United States citizenship as a result of my conviction."
(Capitalization and boldface in original.) Ultimately, petitioner signed the plea petition, pleaded guilty to third-degree assault and riot after a short colloquy with the trial court, and was found guilty of the charges and sentenced under the terms of the plea agreement. Petitioner was released *313 from the Marion County Jail to ICE custody, and removal proceedings were initiated.
Thereafter, petitioner initiated this post-conviction proceeding in which he alleged, among other claims, that his trial counsel provided constitutionally inadequate and ineffective assistance by failing to advise petitioner of the immigration consequences of his guilty plea, and a separate, but related, claim that his plea was unknowingly and involuntarily made because he was misinformed about the immigration consequences of his plea. In his petition for post-conviction relief, petitioner conceded that the plea petition provided accurate advice on immigration consequences of the plea deal. In petitioner's view, however, a constitutionally adequate attorney would have conducted research on immigration law and advised petitioner that a guilty plea to the charges would render him ineligible to be considered for the DACA program-a program in which the Department of Homeland Security (DHS) exercises prosecutorial discretion in deferring the enforcement of federal immigration laws against specified individuals who arrived in the United States before they were 16 years old and who meet other criteria, including not having been convicted of a felony, a significant misdemeanor, or multiple misdemeanor offenses.[1] For its part, the state remonstrated that trial counsel had sufficiently informed petitioner of the risk of deportation and that petitioner fully understood the deportation consequences of his plea. The post-conviction court denied relief, concluding that trial counsel provided "correct and sufficient advice" and finding that petitioner "knew the consequences but was so eager to get out of jail that he refused extra time to consider/consult and instead entered the plea."
Post-conviction relief shall be granted when a petitioner has established a "substantial denial" of a state or federal constitutional right and "which denial rendered the conviction void." ORS 138.530(1)(a). For claims of inadequate and ineffective assistance of counsel, the state and *314 federal standards for post-conviction relief are "functionally equivalent." Montez v. Czerniak , 355 Or. 1, 6-7, 322 P.3d 487, adh'd to as modified on recons. , 355 Or. 598, 330 P.3d 595 (2014). There are, however, some areas where the state and federal standards differ. Compare Ryan v. Palmateer , 338 Or. 278, 295-97, 108 P.3d 1127, cert. den. , 546 U.S. 874, 126 S.Ct. 384, 163 L.Ed.2d 169 (2005) (rejecting structural error and presumed prejudice doctrines) with United States v. Cronic , 466 U.S. 648, 659-60, 104 S.Ct. 2039, 80 L.Ed. 2d 657 (1984) (presuming prejudice where a defense counsel failed to function in any meaningful sense). We examine the state and federal claims of inadequate assistance and ineffective assistance separately because petitioner's claim under Article I, section 11, of the Oregon Constitution is, as explained below, foreclosed by a prior decision.
To sustain a claim of inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, a petitioner must prove by a preponderance of the evidence both that trial counsel failed to exercise the professional skill and judgment necessary to "diligently and conscientiously *110 advance the defense" and that the petitioner was prejudiced as a result of trial counsel's deficient performance. Krummacher v. Gierloff , 290 Or. 867, 874, 883, 627 P.2d 458 (1981). To prove ineffective counsel under the Sixth Amendment, a petitioner must prove that, considering all the circumstances, trial counsel's "identified acts or omissions were outside the wide range of professionally competent assistance" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington , 466 U.S. 668, 690-94, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).
As an initial matter, petitioner recognizes that Gonzalez v. State of Oregon , 340 Or. 452, 134 P.3d 955 (2006), forecloses his argument based on the state constitution. In Gonzalez , the Supreme Court held that, under Article I, section 11, it is sufficient to advise a client that a state conviction "may result" in deportation. See also Lyons v. Pearce , 298 Or. 554, 567, 694 P.2d 969 (1985) (noting that, for a noncitizen defendant, awareness of the possibility of deportation is necessary to an informed plea). In Gonzalez , *315 the petitioner, a nonresident, pleaded guilty to possession and delivery of a controlled substance after being warned by counsel that "pleading guilty may cause [his] deportation." 340 Or. at 455, 134 P.3d 955. The petitioner filed a post-conviction petition alleging that "counsel's failure to tell him that he would be deported if he pleaded guilty" violated his right to adequate assistance of counsel guaranteed by the state constitution. Id. The post-conviction court agreed and granted post-conviction relief, and we affirmed. Id. On review of our decision by the Supreme Court, the petitioner argued that "counsel should have identified each exception to deportation that might apply to him and that his counsel then should have explained the likelihood that each exception would apply." Id. at 457, 134 P.3d 955. The Supreme Court rejected the petitioner's argument and reversed our decision and the judgment of the post-conviction court, explaining:
"The level of specificity that petitioner would impose on defense counsel goes far beyond what this court has required as an incident of constitutionally adequate assistance. As noted, in determining what counsel must tell their clients about the direct consequences of a guilty plea, the courts have held that a defense counsel must advise his or her client of the maximum penalty that the trial court can impose as well as the possibility of a minimum sentence. The court has not held that the Oregon Constitution requires counsel to attempt to specify the likelihood that the trial court might impose either the maximum or minimum sentence."
Id. at 459, 134 P.3d 955.
In this case, although trial counsel did not discuss eligibility for deferring removal proceedings under a prosecutorial discretion program, trial counsel did inform petitioner that he would be deported unless ICE decided not to pursue removal proceedings. That advice satisfies the requirement from Gonzalez that defense counsel "advise clients who are not United States citizens that a criminal conviction 'may result' in deportation." Id . at 458, 134 P.3d 955. Therefore, trial counsel's performance was not deficient in that regard. Further, to the extent that petitioner contends that Gonzalez should be overruled in light of Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed. 2d 284 (2010), that contention is one for *316 the Supreme Court. See Re v. PERS , 256 Or. App. 52, 54, 301 P.3d 932 (2013) (explaining that "[i]t is not this court's role to overrule, directly or indirectly, Supreme Court case law").
Turning to petitioner's claim under the Sixth Amendment, the gravamen of petitioner's argument on appeal is that, under Padilla , constitutionally effective counsel must provide advice about a plea's effect on immigration and the consequences of a plea on eligibility for a temporary stay of deportation proceedings. We disagree with petitioner's assertion that Padilla requires criminal defense counsel to give such comprehensive and specific immigration advice.
In Padilla , the petitioner was a lawful permanent resident for four decades who faced deportation after pleading guilty to a drug offense. 559 U.S. at 359, 130 S.Ct. 1473. In a post-conviction proceeding, he claimed *111 that his trial counsel failed to advise him of the deportation consequences before he entered his plea and alleged that he would have insisted on going to trial if he had not received incorrect advice from his attorney. Id. Before the petitioner pleaded guilty, trial counsel told the petitioner that he "did not have to worry about immigration status since he had been in the country so long." Id. (internal quotes omitted). That was incorrect advice, and the Court noted that "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequences for [the petitioner's] conviction." Id. at 368, 130 S.Ct. 1473. Consequently, the Court concluded that the petitioner had "sufficiently alleged constitutional deficiency to satisfy the first prong of Strickland. " Id. at 369, 130 S.Ct. 1473. Ultimately, the Court held that, "when the deportation consequence [of a conviction] is truly clear, as it was in this case, the duty to give correct advice is equally clear," such that a failure to give such advice violates the Sixth Amendment. Id. at 369, 130 S.Ct. 1473. In so holding, the Court recognized that
"[i]mmigration law can be complex, and it is a legal specialty of its own. * * * There will, therefore, undoubtedly be numerous situations in which deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward * * * a criminal defense attorney need do no more than advise a noncitizen *317 client that pending criminal charges may carry a risk of adverse immigration consequences."
Id. at 369, 130 S.Ct. 1473.
In contrast to the incorrect advice given in Padilla , here trial counsel advised petitioner that he "would be deported unless ICE decided not to pursue removal proceedings," and trial counsel reviewed with petitioner the plea petition, which explained, among other things, that if he was not a citizen or was in the county without permission, a conviction "will result" in deportation from, or exclusion from admission to, the United States. The plea petition further explained that petitioner may be denied citizenship as a result of a conviction. Thus, trial counsel's advice complied with the Sixth Amendment guarantee of effective counsel articulated by Padilla because counsel advised petitioner of the risk of adverse immigration consequences. To the extent that petitioner suggests that Padilla requires constitutionally adequate trial counsel to provide additional advice relating to temporary relief from removal proceedings under DACA, we disagree.
In order to show that counsel was ineffective because of his failure to advise petitioner on the broader immigration consequences, such as DACA eligibility, it was petitioner's burden to show that the failure to provide such advice fell below an objective standard of reasonableness. See Strickland , 466 U.S. at 688, 104 S.Ct. 2052 (instructing that in an ineffective assistance inquiry, judicial scrutiny should be "highly deferential" in determining "whether counsel's assistance was reasonable considering all the circumstances"). In this case, however, petitioner has put forth no "[p]revailing norms of practice" or other authority to support his contention that trial counsel's advice was not reasonable and therefore constitutionally deficient. Id. Accordingly, petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of professionally competent assistance." Id. at 689, 104 S.Ct. 2052.
Petitioner's related claim that his plea was entered unknowingly and involuntarily based on trial counsel's advice with respect to the immigration consequences of his plea similarly falls short. In petitioner's view, his plea *318 "was entered into unknowingly and involuntarily as he did not understand the required legal sanction for his plea." Although petitioner contends in his second claim that he did not know the consequences of his plea, we understand the premise of his contention to be the same as it was for his first claim, viz. , that trial counsel was required to advise him that his plea would disqualify him for DACA. As we conclude above, that premise is erroneous. Accordingly, we reject petitioner's contention that the post-conviction court erred in rejecting his second claim.
In short, we reject both of petitioner's arguments assigning error to the denial of post-conviction relief. Although trial counsel *112 did not provide comprehensive immigration advice on the consequences of a guilty plea or discuss DACA eligibility with petitioner, trial counsel did advise petitioner that "he would be deported unless ICE decided not to pursue deportation proceedings," and the plea petition that counsel reviewed with petitioner also informed petitioner that his plea and the conviction would result in deportation. Accordingly, because trial counsel's advice was constitutionally sufficient under both Gonzalez and Padilla , the post-conviction court did not err in denying post-conviction relief.
Affirmed.

See U.S. Citizenship & Immigration Services, Consideration of Deferred Action for Childhood Arrivals (DACA) , U.S. Citizenship & Immigration Services, https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-daca (accessed April 23, 2018).